FILED
97 OCT 10 PM 3:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| VIVIAN HOWARD; WILLIAM DAVIS; VIRGINIA GUSTIN; MARY JANE STREET; and JEAN WELCH, | ]<br>]<br>]<br>] |
| Plaintiff(s), | ] CV-96-N-2062-S<br>]<br>] |
| vs. | ]<br>] |
| AMI/BROOKWOOD MEDICAL CENTER and TENET HEALTHCARE CORPORATION, | ]<br>]<br>]<br>] |
| Defendant(s). | ] |

ENTERED
OCT 10 1997

**Memorandum of Opinion**

**I.   Introduction.**

In this employment discrimination action, the plaintiffs, Vivian Howard ("Howard"), William Davis ("Davis"), Virginia Gustin, Mary Jane Street, and Jean Welch ("Welch"), bring claims against AMI/Brookwood Medical Center ("BMC") and Tenet Healthcare Corporation pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Specifically, the plaintiffs contend that the defendants discriminated against them on the basis of age when the defendants terminated their employment and replaced them with younger employees. *Complaint* at 2-5.

The matter is presently before the court on the defendants' motion for partial summary judgment, filed on June 9, 1997. The defendants have asked the court to dismiss with prejudice the claims of three of the five plaintiffs — Howard, Davis, and Welch.

34

*Defendants' Motion* at 1-2. The motion has been fully briefed and, upon due consideration, will be granted in full.

## II. Statement of Facts.[1]

Davis, Welch, and Howard, along with several other BMC employees, were laid off as part of a reduction-in-force ("RIF") on August 8, 1995. At that time, BMC had been restructuring for several years. The defendants contend that the RIF was precipitated by a need to reduce costs in order to remain competitive, *Stalnaker Deposition* at 34-35, while the plaintiffs assert that such reason was merely a sham for age discrimination. *Plaintiff's Statement of Facts* at ¶ 3.

Davis worked at BMC as the medical center's only audio/visual specialist. His supervisor was Cheryl Gore ("Gore"), the consulting leader of the education and development department. At the time his employment was terminated, Davis was 53 years old. No one was hired to replace Davis. Instead, his duties were assumed by other employees within and outside the education and development department and were outsourced to outside vendors. Davis knows of no other available positions for which he was qualified at the time he was terminated.

Welch worked in BMC's education and development department as a leadership education specialist. Gore hired Welch in November 1993, supervised Welch throughout her employment, and recommended her layoff in August 1995. Welch was 45 years old

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

when BMC hired her and was 46 when her employment was terminated. Gore selected Welch for layoff because Welch is not a registered nurse and lacked the clinical experience necessary to conduct clinical education and training programs.[2] BMC did not replace Welch. Rather, it assigned her duties to Gore and the two clinical education specialists in the education and development department. Welch is unaware of any other available positions for which she was qualified at the time she was terminated.

Howard was employed by BMC as a registered nurse in the GI Lab. She was supervised by Judy Reynolds ("Reynolds"), the consulting leader of the GI Lab. When her employment was terminated in August 1995, she was 53 years old. Reynolds selected Howard for layoff because Howard scored lowest of all GI Lab registered nurses on the 1994 evaluation and received a corrective action prior to the 1994 evaluation.[3] No one was hired to replace Howard. Rather, her duties were absorbed by the remaining registered nurses employed in the GI Lab.

Gore was involved solely in the decision to terminate Davis's and Welch's employment, while Reynolds was involved only in the decision to terminate Howard's employment. Neither was involved in any other such decisions in August 1995.

---

[2] The plaintiffs dispute this statement, stating that, while the proposed fact is immaterial to the motion for summary judgment, registered nurse status and clinical experience are not essential to Welch's former position. *Plaintiffs' Response to Defendants' Amended Statement of Facts* at ¶ 15. Because the plaintiffs do not cite any evidence in support of their dispute, however, the fact will be deemed admitted for purposes of summary judgment. *See Exhibit D* at 4 ("All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment."). As provided by Exhibit D, the court requires a party opposing a summary judgment motion to specifically cite the record to justify its denial of a claimed undisputed fact that is properly supported by the movant.

[3] The plaintiffs also dispute this statement but cite no evidence in support. *See Plaintiffs' Response to Defendants' Amended Statement of Facts* at ¶ 22. Thus, according to the terms of Exhibit D, the statement of fact will be deemed admitted for purposes of summary judgment.

3

BMC placed an advertisement in the August 6, 1995, classified section of *The Birmingham News*, announcing it was searching for a registered nurse to perform home infusion services. It ran another advertisement on September 10, 1995, September 17, 1995, and September 24, 1995, for an Operations Leader for the GI, GU, and Medical-Surgical Overflow Unit and a second announcement on September 24, 1995, and again on October 1, 1995, that it was seeking a registered nurse for the Center for Mental Health. The plaintiffs claim that these positions were similar to those eliminated and that each of the plaintiffs was qualified for the positions.[4] Neither Welch, Davis, nor Howard were offered alternative jobs by BMC at the time of their discharges or anytime thereafter. Welch and Davis each testified at deposition that they were unaware of any open position for which they were qualified at the time of the RIF. *Welch Deposition* at 51; *Davis Deposition* at 37. Howard testified at deposition, however, that she was aware of an opening for a registered nurse "on the fifth floor" but did not pursue it because Reynolds told her there were no jobs for her at BMC. *Howard Deposition* at 178-79. Howard also testified that Reynolds told her there might be an opening in radiology but because the position was not definitely available, Howard failed to pursue the position. *Id.* at 148-49. Davis testified at deposition that after his termination, two doctors requested that he set up audio/visual equipment for them. *Davis Deposition* at 43-44. BMC allowed Davis to use its equipment for these purposes, and Davis was paid for his services either by the doctor or a third party. *Id.* at 44-45.

---

[4] The plaintiffs cite Howard's Affidavit at ¶¶ 5, 7 as support for the contention that each of the plaintiffs was qualified for the advertised positions. As the defendants point out, however, Howard's affidavit addresses only her qualifications and not those of her co-plaintiffs.

4

> The BMC employee handbook states:
>
> [w]hen reduction-in-force terminations are necessary, they may be based upon position, performance, productivity, qualifications, and ability as judged by the facility. In cases where it is determined that these factors are essentially equal between you and one or more employees, length of service will also be considered in determining who will be retained.

*Howard Affidavit* at Ex. C. BMC used a "Policies and Procedures Comparative Analysis and Evaluation of Performance Form" ("Comparative Analysis Form") to determine that plaintiff Virginia Gustin's employment should be terminated. That form compares, among other things, the last two performance evaluations of candidates for layoff. *Stalnaker Deposition*, Ex. 3 at 9-11 (unnumbered pages). A Comparative Analysis Form was not completed with regard to Howard, however. *Id.* at Ex. 1. Had a form been completed with regard to Howard, her performance average would have been 242.5 and higher than that of Linda Mones who is younger than Howard. Eighteen positions were eliminated in BMC's August 1995 RIF. *Stalnaker Deposition*, Ex. 3 at 12 (unnumbered pages). Of the individuals employed in those positions, eleven were age forty or older at the time their employment was terminated. *Id.*

### III.   **Summary Judgment Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

5

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law

6

will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference

but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

The plaintiffs contend that the defendants discriminated against them in violation of the ADEA when the defendants terminated their employment and replaced them with younger employees. The ADEA prohibits an employer from discharging or otherwise discriminating against an employee on the basis of age. 29 U.S.C. § 631 *et seq.* Individuals who are at least 40 years of age, § 631, may seek to establish a prima facie case in one of three ways: (1) by direct evidence of discriminatory intent; (2) by statistical proof; (3) or by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).

### A. Direct and Statistical Evidence.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). Where there is a suggestion of discrimination, *see Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990), or the evidence may be interpreted in more than one way, *see Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n. 2 (11th Cir. 1996), there is no direct evidence of discriminatory motive.

8

A second means by which the plaintiffs may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of age discrimination on the part of the defendants. *See Early v. Champion Int'l Corp.*, at 1081; *Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). Raw figures are seldom useful because they provide no framework for analysis. "Statistics . . . without an analytic foundation, are virtually meaningless." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991). Moreover, while statistics are often important in class actions and disparate impact cases, they "are of relatively low importance in an individual disparate treatment case." *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 n. 8 (7th Cir. 1990). As the Eleventh Circuit has said, "statistics alone cannot make a case of individual disparate treatment." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984).

The plaintiffs proffer what they contend is direct evidence of discrimination. Plaintiff Mary Jane Street testified at deposition that on her seventieth birthday, her supervisor inquired as to her retirement plans. *Street Deposition* at 27. Street maintains that she was subsequently informed that BMC "would like to hire a full-time, young, vivacious dietician" and asked if she would consider reducing her hours to part-time. *Id.* at 27-28. Such evidence, however, does not concern the plaintiffs whose claims are the subject of the instant motion for summary judgment. Ms. Street worked in a department different from the one where Howard, Davis, and Welch worked and the comments in question were made by a different decision maker. Thus, they are insufficient to raise an inference of discrimination with regard to Howard, Davis, and Welch. Accordingly, as these particular

9

plaintiffs have presented no direct or statistical evidence of discrimination, they must rely upon circumstantial evidence in an effort to establish a prima facie case of discrimination.

### 1.   *McDonnell Douglas* Test.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[5] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring it to articulate a "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather

---

[5] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

10

is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

To establish a prima facie case of age discrimination with circumstantial evidence, each plaintiff must prove that (1) he is a member of a protected group; (2) an adverse employment action was taken against him; (3) the person hired was from outside the

11

protected group; and (4) he was qualified for the position. *Carter*, 870 F.2d at 582. A plaintiff in an age discrimination case who was terminated in a RIF must demonstrate that

> (1) he was a member of a protected group who was adversely affected by an employment decision; (2) he was qualified for his former position or another position at the time of the adverse decision; and (3) direct or circumstantial evidence from which a factfinder might reasonably conclude that the employer, in reaching the decision at issue, intended to discriminate on the basis of the plaintiff's age.

*Langston v. Carraway Methodist Hosps. of Ala., Inc.*, 840 F. Supp. 854, 864 (N.D. Ala. 1993).

The defendants concede that Howard, Davis, and Welch have established the first element of their prima facie case in that they were each forty years of age or older when their positions were eliminated. *Defendants' Memorandum in Support* at 6. The defendants argue, however, that these plaintiffs have not demonstrated the second and third elements as they are required to do. *Id.*

It is undisputed that neither Welch nor Davis knew of any open position for which she or he was qualified at the time of the RIF. Accordingly, these plaintiffs cannot demonstrate the second element of their prima facie case. Howard testified that her supervisor informed her there were no available positions but subsequently stated that there might be a position open in radiology. *Howard Deposition* at 148-49. Howard did not pursue the suggestion, however, because she considered her supervisor's statement to have no validity. *Id.* at 149-51. She later testified that she was aware of a position "on the fifth floor" for which she had seen a notice the week prior to her termination. *Id.* at 178-79. Again, however, she did not pursue the position.

The Eleventh Circuit has observed that

> the ADEA does not mandate that employers establish an interdepartmental transfer program during the course of a RIF, . . . or require that "younger employees be fired so that employees in the protected age group can be hired," . . . or impose any added burden on employers to transfer or rehire laid-off workers in the protected age group as a matter of course.

*Jameson v. Arrow Co.*, 75 F.3d 1528, 1532-33 (11th Cir. 1996) (citations omitted) (quoting *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990)). While Howard has presented some evidence that one or more positions were available at the time her employment was terminated, she has not sufficiently indicated what those positions were or the qualifications necessary to fulfill the duties. Accordingly, she, like Welch and Davis, has failed to establish the second element of her prima facie case of age discrimination.

Assuming, *arguendo*, that these plaintiffs can make out a prima facie case, however, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for terminating these individuals' employment. This burden is very light as it is one of production only. It is undisputed that Howard, Welch, and Davis were each told that his or her position was being eliminated pursuant to a RIF. None of the three was replaced by another individual; rather, their duties were merely absorbed by other members of their respective departments. Thus, the defendants have sufficiently demonstrated that they had a legitimate, nondiscriminatory reason for discharging these plaintiffs.

Accordingly, the burden shifts back to the plaintiffs to prove by a preponderance of the evidence that the proffered reason is mere pretext for a discriminatory motive. Again, however, the plaintiffs fail to satisfy their charge, for the evidence they have offered to rebut the defendants' proffered reason is bare conjecture on their part. They have no evidence other than their own conclusory allegations to support their contentions.

Davis testified at deposition that he has "no concrete facts" to support his claim of age discrimination, *Davis Deposition* at 26; rather, he bases his belief solely on his opinion. *Id.* at 25-29. Neither could he identify anyone at BMC who he believed had acted in a discriminatory fashion. *Id.* at 32. Likewise, Welch testified that she has no evidence of discrimination and bases her claim on comments she alleges Gore made and on the fact that several older employees were terminated simultaneously with her. *Welch Deposition* at 43-50. She elaborated upon Gore's alleged comments, stating that Gore remarked on Welch's slow performance, her poor memory, and her comprehension difficulties. *Id.* at 43-46. None of these comments references Welch's age, however. And while it is undisputed that eleven of the eighteen employees affected by the RIF were forty or older, this fact alone is virtually meaningless. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir. 1991). Finally, Howard testified that she was told by other nonmanagerial BMC employees that BMC maintained a list of older workers who were targeted for termination. *Howard Deposition* at 59-60. She admitted, however, that she never saw such a list. *Id.* Howard also contends that her department maintained a list of employees' birth dates. *Id.* at 136-39. It is undisputed, however, that Howard's supervisor did not use such a list, if one does in fact exist, when determining which position to eliminate. *Reynolds Affidavit* at ¶ 6. Finally, Howard testified that, one year prior to her termination, her supervisor asked her when she was planning to retire. *Howard Deposition* at 132-36. The passage of time between the alleged comment and the adverse employment action negates any causal relation these events might have, however.

In the plaintiff's submission in opposition to the motion for summary judgment, they attempt to demonstrate pretext by pointing to various events that happened contemporaneously with the RIF or shortly thereafter. BMC's chairman received a bonus of allegedly four million dollars in August 1995, *Plaintiff's Statement of Facts* at ¶ 3A, and all BMC employees received a three-percent salary increase three months after the RIF occurred. *Id.* at ¶ 3B. The plaintiffs point to the advertisements for registered nurse positions BMC ran in *The Birmingham News* from August 5, 1995, through October 1, 1995. *Id.* at ¶¶ 3D, 3E. Finally, they contend that BMC failed to follow its established procedures for eliminating positions. *Id.* at ¶ 4. None of these events, however, are sufficient to raise a genuine issue regarding the defendants' proffered legitimate, nondiscriminatory reasons for selecting these plaintiffs for participation in the RIF. It is within the defendants' prerogative to give their employees raises and bonuses, and such fact does not demonstrate that the RIF was a sham for age discrimination. The fact that positions became available at or shortly after the plaintiffs' terminations does nothing to refute the proffered reason either, for requiring an employer to consider an employee terminated pursuant to a RIF for available positions months before and after his discharge "would effectively prohibit employers from planning and implementing RIFs if the reductions affected employees in the protected age groups." *Early*, 907 F.2d at 1083 n. 4. Finally, while BMC completed a Comparative Analysis Form with regard to plaintiff Virginia Gustin and failed to do so with regard to Howard, the plaintiffs have presented no evidence indicating that this procedure was mandated by BMC policy. They offered a copy of the employee handbook that stated that performance, productivity, qualifications, and ability

15

would be judged in determining which positions to eliminate pursuant to a RIF. Seniority would be considered if two or more individuals possessed identical factors. According to the deposition testimony of Tom Stalnaker, this is precisely the procedure BMC followed. *Stalnaker Deposition* at 39. The plaintiffs have not rebutted this evidence.

Thus, the plaintiffs are left simply with their own conclusory allegations, based on conjecture and opinion, that BMC discriminated against them on the basis of age. Such "evidence," according to the law of this Circuit, is simply insufficient to satisfy their burden at this stage of the analysis.

## V.   **Conclusion.**

Accordingly, the defendants' motion will be granted in full. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __9th__ of October, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE